The next case for this morning is case number 416-0392, Hoffman v. Madigan. For the appellant we have Mr. Miroshko. Is that how you pronounce that? No, no, I want to know how you pronounce it. Okay, all right. And then also for the appellee we have Mr. Huzgah. Huzzah. Huzzah, all right. Thank you. You may proceed, counsel. I wasn't going to start off lying to you, Your Honor. That's probably a good choice. Thank you, and may it please the court. This case before you right now raises an important separation of powers issue between two constitutional officers within the executive branch of government, and that is the governor and the attorney general. And the question boils down to this. After the governor has made a determination, which is consistent with his constitutional authority as the supreme executive power and in discharge of his constitutional responsibility for the faithful execution of the law, after he has made a determination in his administrative power that certain groups of workers' compensation claimants are not able to claim workers' compensation from the state of Illinois, and after that determination has been challenged by one of those claimants, does the attorney general have the veto power over the governor's decision when in the workers' compensation tribunal she says, I agree that you could have exercised that power before, but now we're in litigation and I'm in charge, and therefore I'm not allowing you to present that argument. I'm not allowing you to say to the workers' compensation tribunal that that's why you made that determination. I'm not going to allow you to defend that determination. You cannot do any one of those things because we are in charge. We represent you. And that's effectively a veto power. Does the attorney general have that veto power over the governor's determination? The answer to that question is no, she does not. She does not because in our constitutional separation of powers design, the governor has the authority to discharge his obligation just as much as the attorney general does hers. And in situations like this one, independent counsel is a proper way to go because it does not displace the attorney general from her constitutional obligation. She can still, on behalf of the state and its people, to advocate whatever point she wishes to make to the workers' compensation tribunal, but the important element is that the governor will be able, and his agents in this case, CMS Director Hoffman or DHS for that matter, whoever the client happens to be, they can articulate to the tribunal why the claim was denied. Otherwise, it's as good as the governor has no authority in this case because his determination cannot even be presented to the workers' compensation commission. The trial court below reached a different conclusion than with all due respect to Judge Maldonado. That conclusion was an error for a couple of reasons that I'd like to discuss with you this morning, and we would ask that this case be reversed and remanded back to the trial court for the appointment of independent counsel. The two reasons that I would like to discuss with you this morning is, one, the precedent from the First District Court of Appeals, suburban Cook. I'm not going to belabor the facts and discuss the case in detail, just the key points from it, which resolves this matter in our view. And the second point that I'd like to discuss with you is, even if suburban Cook did not exist, the first principles of separation of powers embedded in our Constitution for the State of Illinois would guide you to the same conclusion. So whether because suburban Cook is precedent that governs this case or because separation of powers, first principles of our Illinois constitutional setup, guide the same outcome, for either one of those two reasons, the conclusion is the same. The governor ought to be able, through independent counsel, to present his decision-making and defend it before the workers' compensation tribunal. So I'll begin with suburban Cook. And what's very interesting about the case is, that's a 1996 decision, and before that decision you have a century, if not more, of Illinois Supreme Court case law. Despite that, the court says, what's before us is the very troublesome question of the right to representation when a public official's opinion of the law applicable to his office is in conflict with the opinion of the lawyer whose statutory duty is to represent that party. And the court says that we don't have precedent that tells us how to resolve this case. So what's astonishing is that, despite the Attorney General's representation in their brief, that this case is easily resolved by those many, many precedent that predate suburban Cook and that have come out since, none of those cases are on point because they don't deal with the unique situation that was presented to the suburban Cook, which is what do you do when you have two constitutional officers and in that case it was a public school official, but the analysis is the same. You have two officials. One has the administrative responsibility and is arguing to advance the law applicable to his or her office, and the other one is the constitutional legal officer, whether the Attorney General or the state's attorney. But counsel, let me ask you, what do the factual differences in suburban Cook and the case before us, how does that impact our analysis? Because, of course, in suburban Cook you had an obligation on the part of the state's attorney to represent both warring entities. We don't have that here. And so that language that you cited is very strong and relevant language, but did they really have to resolve that issue? So the answer is yes, Your Honor, they did, and I will give you two points on that. One, in suburban Cook itself, what they talked about is, and you get that in the statement of the rule of law that emerges, the court says, if the official is able to establish a tolerable claim, which the Attorney General is unwilling to support, and then there is an or, or the Attorney General is representing two parties in the case. So there's actually two parts to suburban Cook. So the first part is, if the official is able to establish a tolerable claim, which the Attorney General is unwilling to support, in that case the court should be able to exercise its discretion and to appoint private counsel because But that or says, if the state's attorney is representing two agencies who are in conflict, we don't have that here. You do not, and I will concede that you do not have that here. But the important part of suburban Cook and the law that it develops, because of the or, it's either one of those things would apply, because the conflict inherent in the Attorney General stepping in and blocking the Governor from his ability to advance the argument to the Workers' Compensation Tribunal, the conflict inherent in allowing the Attorney General to block the Governor from being able to speak or to allow the plaintiffs in that case from being able to speak, the conflict is there regardless of whether the Attorney General has to represent both sides because the Attorney General is the first place we go to when we say, we need you to represent us in this case. So whether there is a conflict because the Attorney General represents two parties or the Attorney General is only there on behalf of the state, we have the same issue because the separation of powers problem between the Governor and the Attorney General is the same. And the second point I would make to your question, which I think goes to the heart of this case, is then you have Edgar V. Tully. So in 1997, the same, I think there's an overlap of two judges, two justices who are on the panel in both cases. They decide a matter which also had to do, admittedly, with the Attorney General representing potentially both sides of the case. But the analysis that the court goes in Edgar V. Tully, the analysis that the court goes through shows that they're not focusing on just because there's a conflict, we have to resolve this issue. In Tully, they go and, I'll pull up the case and maybe I can, Roboto will speak to that a little bit more directly and point you exactly to the page where it appears in Edgar V. Tully. But the analysis that the court goes through starts with the point that the Attorney General has to allow that plaintiff in that case to get representation from the Attorney General's office. And then if the Attorney General is not able for some reason, then they have to allow for the appointment of independent counsel. So the premise there is, yes, the Attorney General is obligated to represent the person, yes, there is a potential conflict, but the case is not really about the conflict between the Attorney General shown up on both sides of the case. And the reason for that, as the Attorney General correctly points out, is EPA. The Attorney General is able to come into the case on both sides of the beat. In some circumstances, they can do that. So the relevant part of the analysis from Suburban Cook and Edgar V. Tully that we developed, that the court develops, is actually what do you do when, again, the public official is in disagreement with the Attorney General or the state's attorney about a point of law that applies to the public official's charge of his or her obligations in office. So the issue with that, and this comes up in the Attorney General's brief a lot, is this distinction of Suburban Cook. And we would submit to you, Your Honor, that the distinction is not relevant for the purposes of the rule of law that is developed in Suburban Cook and then accepted in Edgar V. Tully does not focus necessarily on there being two parties that the Attorney General has to represent. That's an or. And so either one of those things on the other side of the or give you the rule of law. And we have the situation, which is the first one, where the official is able to establish a tolerable claim. The Attorney General does not argue that our claim is not tolerable. That goes to the merits of the underlying workers' compensation issue, where we have a tolerable position that, in this case, employees are not employees of the State of Illinois, and therefore we can reject those claims on the basis of the lack of the employer-employee relationship. And that brings me to the question of what is a tolerable claim, and is there a difference between a tolerable claim and a defense? I guess when I think of a claim, I'm thinking of, you know, an allegation, a meritorious claim, something that you can bring forward against someone versus a defense, a way of defending something that someone else is seeking against you. Is there a difference? I don't think there is in this case, Your Honor, because what you focus on is before this case goes to litigation, right? So we start here with the governor asks his counsel, his in-house counsel for advice, and the agencies are asking general counsels for advice on what do you think we should do here. And that's the tolerable claim in the nature of the other way of saying that, I think, is, is there a tolerable legal determination? Are you basing your actions on a tolerable view of the law, which will be distinct from if the governor were to go out and just advocate for positions that are blatantly unlawful, then we would not argue that we have the ability to defend that position in court. So I think the distinction is between a public official who is acting in the way that is defensible, you can say he has a good faith basis to believe that his actions are proper, and they're based on a tolerable view of the law. In suburban court, they talk about tolerable claim because the issue there was actually a claim as opposed to a defense. But I don't think that's probative to the analysis, or I don't think that's dispositive to the analysis of, well, should it apply if it's actually in the nature of a defense? Because, remember, the key point is we go to the Workers' Compensation Commission, and if we're not allowed to articulate the reason for our decision, then we are as good as dead on arrival, right? Because we haven't, we have the opportunity to make that determination in the administrative context, but then if the Attorney General is not presenting it to the Workers' Compensation Commission, then what good is our determination? So that's the fundamental tension that we have in this case. So we focused on suburban court quite a bit. Our point, to sum up the discussion of that case, is simply that the court reaches a sensible resolution that I don't see the because in so many cases where we have litigation disagreements, they're not about stepping into the other constitutional officer's administrative responsibilities. It's disagreements about, well, do you take this deposition? Do you engage in a certain discovery? All of that we would concede. That's Attorney General. She, as the Chief Legal Officer for the State of Illinois, gets to make those determinations. So what we're focusing on is a very narrow circumstance where I don't see it arising too often. In our experience in the last two and a half years, I mean it's this case and there's one additional one which we had where we said this really goes to the fundamental function of the governor under his separation of powers duties under the Illinois Constitution. So suburban Cook is correctly decided, should be precedent in this court. But even if you set that aside and you go to the basic first principles, you focus on the Attorney General's brief says a lot of things about her powers, the role as the legal officer on behalf of the state and its people writ large, not focusing on any specific government official. And our answer to that is all of that is not in dispute. All of that is precisely correct. The Attorney General is the officer who speaks for the state in litigation. But there's an important corollary, which is when the Attorney General speaks on behalf of the state or the people, what if you have a situation where the government official who is involved in that case and whose administrative decision is being challenged in those cases, how do you analyze that government official's role and his and her ability to defend that decision if it's challenged? And this is where the separation of powers principles, you look at them together, the Attorney General and the governor and their constitutional responsibilities. And if you upset the rule that we are advocating for in this court, what you find is that it doesn't take away from the Attorney General's side of the balance at all. She is still able in all of those workers' compensation cases that we're talking about, she's able to be before the workers' comp commission on behalf of the state. The Attorney General is the chief legal officer, I would think, is able to come to just about any tribunal in the state of Illinois, and she's not going to get turned away from the judge because there is independent counsel representing the government official. The Attorney General can always say that on behalf of a party in interest, so one of the real parties in interest, which in a lot of those cases would be the state of Illinois, she can say on behalf of the state, we are advocating that the governor is incorrect. She's able to say that. Nobody is taken away from the Attorney General's separation of powers. But you want it to be supplemented. Yes, we're trying to say that a different constitutional officer's decision has to be presented and defended without taking away the Attorney General's ability to advocate a contrary point. Is it true that there's a history of this argument being the argument about the employability or employee status has been rejected by the commission? Yes, it is true, Your Honor, and let me just put that in context. So we have that in cases going all the way, I think, up to 2008 or 2009. And as we explain in our brief, this is on pages 19 to 26 of our opening brief, there is a lot that has happened since then. We have the U.S. Supreme Court case, which, you know. That's limited to free speech. It is limited to free speech, Your Honor, but it's not that the case has, the case is of no use to the workers' comp commission. I think according to what the Supreme Court justices have said, you could well argue in the workers' comp proceedings that, you know what, actually the employer-employee relationship has been rejected in a different context by somebody else, and, yes, that was a First Amendment case, and this was a workers' comp case, but it's not as though the views of the U.S. Supreme Court are to be completely ignored on this question. The workers' compensation tribunal could well say, you know what, yes, we're willing to reconsider our position in light of the smart people in the U.S. Supreme Court saying something different. I think that's highly unlikely, but that's another subject. Yeah, that might well be, Your Honor. And I don't want to, I guess, prejudge the outcome there just to make the point, again, that it's not our burden to say that we will succeed in making that argument. I admit that it's highly unlikely that they say those smart guys. Oh, that's fine. It depends on which guys we're talking about, I guess, but that's also another discussion. So from that perspective, and, of course, just the final point on that, the claimant in this case that gives rise to this proceedings, Yenser Price, Stephanie Yenser Price, she actually was one of the named plaintiffs in Harris v. Quinn. So she herself advocated in a different forum and prevailed on an argument that she lacks the employee-employee relationship. So I think, at the very least, we can point out to the workers' compensation commission that before you is a person who, in a different case, I don't want to go as far as saying that she is judicially stopped because I don't want to think through exactly the implications of how she argued her case in the Supreme Court, but it is true that she did make the decision. Well, are you suggesting that you know in advance that the Attorney General wouldn't point that out just as a matter of interest? She would not. They told us specifically they're not talking about the employee-employee relationship. They're not raising their defense. It is as good as we've never decided it. This case now before the workers' comp commission is the equivalent of the governor never rejected the claim based on the lack of the employee-employee relationship. And that's sort of the very troubling posture here that the Attorney General is advocating where she has the ability to veto the decision of a different government constitutional officer. And I think they know, they recognize the tension here because in their brief, and I would focus on pages 10 and 41 of the Attorney General's brief, they make this statement, which is similar to what they argued to Judge Mondonia below. They said, we're not interfering. The governor is able to do whatever he wants to do until the case goes to litigation, in which case we get to do whatever we want to do. Well, that, of course, is the problem here, which is if in litigation the Attorney General can say, nope, I'm disregarding everything that you've done, what good is that power? Well, some of us have sat, well, all three of us have had extensive experience as trial judges. There are a lot of people that complain the state's attorney has too much power representing the people of the state of Illinois, but sometimes taking a viewpoint different than the victims or other citizens on how a crime should be prosecuted. And the answer always was the ballot box. If your elected official doesn't do what they're supposed to, the remedy is at the ballot box. How is that any different here? Two responses to that, Your Honor. The governor, of course, also stands for election, so you can always judge him based on the same rationale. But the important point I will make to you right before my time is up is we're not saying that the Attorney General is, we're not saying she is making an improper legal argument. It's for her to determine on behalf of the state what argument to make. All we are saying is that in a limited context where this, the argument goes to the very nature of how the governor goes about discharging his constitutional responsibilities in order for him to stand for the electorate and defend his position, he has to be able to play it all the way out. As opposed to, in fact, you will find something, I think, pernicious if the governor is always able to say, I did everything right, but then I'm not accountable for any of those things because it went to litigation and somebody else. So I think it's precisely to allow the governor to be fully accountable to his electorate to say those are the decisions that I made in discharging my constitutional responsibilities, and when they were challenged in litigation, on behalf of myself, the governor of the state of Illinois, I made the defense of those arguments. The Attorney General is always able to continue speaking for the state and its people. We are not asking to allow us or some independent counsel to come in and overtake the Attorney General's role on behalf of the state, much like in the state's attorney's context. I see that my time is up. You are out of time, counsel. You will have additional time, Murray Buttle. Did you want him to finish that thought? Yes, finish that thought. So just like with the state's attorney, the answer was always properly given, which is, look, the state's attorney on behalf of the state, they have that power just like the Attorney General here has that power to speak on behalf of the state. But in this case, the governor, too, has the authority under the Constitution that he wishes to present to the Workers' Compensation Tribunal so that it's clear what the decision is made on because otherwise the Workers' Compensation Tribunal can look in the eye of the person who is there on behalf of the state and say, well, I don't get it. Why did you make this determination? What if there's no other defense? In a lot of those cases, there is no additional defense except for the lack of the employee-employee relationship. Thank you, counsel. Thank you. Mr. Hozak? May it please the Court. I'm Assistant Attorney General Richard Hozak, counsel for Defendant Appellee Lisa Madigan, Attorney General of the State of Illinois. In this action, the plaintiff appellant, the director of the Department of Central Management Services, seeks truly extraordinary relief, which is the removal of the Attorney General from the exercise of her constitutional authority as the exclusive representative of the state in all litigation in which the state is the real party in interest. That power was based upon the 1870 Constitution, 100 years of Supreme Court precedent, and a conscious decision in the 1970 Constitution to preserve that exclusive authority to represent the state before the courts, including the power to control the conduct of that litigation. The appellant in this case says that this is a small case limited to its context. They try and describe a variety of limitations or so-called firewalls, but I think the court should not misunderstand or underestimate the sweeping ramifications of the claim that the plaintiff is presenting in this case, which is that the courts should sit in judgment of the discretionary executive functions of the Attorney General, acting as one of the elected constitutional officers of the state of Illinois elected by the voters, with a separate responsibility to represent the state in all matters in litigation, including administrative litigation. The sweeping ramifications of that are so far reaching that I agree with my colleague that this is a case of extreme importance for the administration of justice in the state and the division of responsibility between the different parts of the executive branch of state government. It is the case in Illinois, unlike the federal government, we have a divided executive by constitutional design. There are multiple executive officers in the executive, and those include the Governor, the Comptroller, the Treasurer, the Secretary of State, and the Attorney General, who is identified in the Constitution as the legal officer of the state, not the legal officer of some agencies, not the legal officer of some lower executive officials, and indeed the Supreme Court precedent from 100 years ago, the Burgess v. Russell case makes clear that the Attorney General's exercise of that function includes representing the executive officers of the state for which he has the exclusive power. The Constitution answers this question, and Supreme Court precedent answers this question, which is that when the state is the real party in interest in litigation, the state speaks with a single voice, and that is the voice of the Attorney General. And as this Court recognized just last year in the Suburtoitz case, and the Illinois Supreme Court has repeatedly recognized, the design of the Constitution is to have the Attorney General exercise that discretionary responsibility in the broader interests of all of the people of the state of Illinois, not the particular interests of a given agency or official or officer who happens to be the named party in a particular piece of litigation. This is not a novel concept. In Holdsworth's well-regarded treatise on the history of English law, he makes clear that in the mid-1700s, long before the Illinois Constitution of 1870 was adopted, the Attorney General took the position that he was answerable to the people of the realm, not just particular ministers, and he specifically, consciously, and affirmatively refused to take positions that ministers demanded he take when he believed that that was not in the interest of the people. That is the construct that Illinois has adopted in its Constitution, and the plaintiff here is asking this Court, essentially, to overturn that decision in the 1970 Constitution, despite the Constitutional Convention debates that established unequivocally that the decision made was to preserve the structure that was adopted in the Constitution with respect to all litigation in which the state is the party in interest. I could go on trying to emphasize the significance of the case, but I believe the Court gets my point, which is that this is a discretionary function, and there are very troubling implications from the notion that the Court should now decide whether they believe that the Attorney General may have exercised that discretionary function in a wise, just, reasonable, or even arguably arbitrary manner, and that is like prosecutorial discretion for states' attorneys. Going down that road would essentially involve the courts in doing something that they do not do with other discretionary exercises of power by executive officials. Now, the courts will review administrative agency adjudicative decisions, much like they review lower court decisions, but we're not talking about adjudicative decisions. We're talking about executive decisions, and in that respect, the courts always have the power, upon the claim of somebody withstanding, to police the exercise of executive functions to make sure that they are within the restrictions of the Constitution and governing statutes, but that's not what's at issue here. What's at issue here is a desire to have the courts sit in judgment of the exercise of the Attorney General's discretionary power in an area where there is no constitutional prohibition on what she's doing. There is no statutory prohibition on what she's doing. It's a discretionary function, and they are saying that the courts should just go ahead and decide whether they agree or disagree with the exercise of that function, and if they disagree that she's exercising it in an appropriate way, that they can order her replacement with somebody else, or order somebody else to stand beside the Attorney General in a case so that you have multiple voices speaking for the state. This is one of those, will the real attorney for the state please stand up problems, but the Supreme Court has resolved that and explained that under the Constitution, there is an exclusive power, not just a power that can be supplemented by other people when it's considered appropriate. Now, no principle of law or few principles are absolute, and this one also recognizes its exceptions, and those include the situation in which there is an actual conflict of interest, and that's the classic situation in which an attorney is representing opposite parties in the same case, or has a duty of loyalty conflict based upon a personal interest or an interest. What's significant here is the Supreme Court has spoken on that issue, has said that section six of the Attorney General Act essentially governs it, establishes that there are situations in which courts do have the power to remove the Attorney General for a conflict of interest. Those are two narrow situations where she is personally interested in the case, not here, and when she is an actual party to the case, not here. So, although the plaintiff in this case first started arguing that there was a conflict of interest, a conflict of interest, and that justifies removing the Attorney General, and they cited Suburban Cook for that proposition, there is no conflict of interest. That provision of the Attorney General Act, section six, does not apply, and it does not provide any basis for the courts to exercise their legitimate statutory authority to deal with those situations in which that conflict justifies disqualifying the Attorney General. I do want to emphasize that conflicts of interest in the realm of private counsel, and conflicts of interest in connection with the representation of the government, by government lawyers, have different rules, and that's consistent with the basic framework of the rules of professional conduct that recognize that the rules that govern private lawyers, which was the main focus of the rules of professional conduct for many years, those are not the same. They operate in a fundamentally different way with respect to both conflict of interest issues and the separate conceptual issue, which is who has the party to control decisions in connection with the litigation? That's a separate rule, 1.2 under the rules of professional conduct. Conflicts of interest rule 1.10, imputed disqualification rule, I'm sorry, 1.7, and then imputed disqualification 1.10. Rule 1.2 deals with disagreements between attorney and client, and the preamble to the rules makes it clear, consistent with Supreme Court precedent, again, that in situations where the government is the client and a government law firm is representing the client, that very often it is the lawyer, not the client, who has the ability to make that decision, and that is essentially because the lawyer often has to represent the public interest, or in the case of the Attorney General, the interest of the people of the state of Illinois at large, not just the particular interest of whoever happens to be named a party in a case, whatever state official or state agency. I also want to reinforce the idea that we are dealing with a situation in which other states proceed differently. In Arizona, for example, the case law is clear. The Attorney General answers to whatever the agency says they want to do. They're like a captive law firm for all the different agencies of state government. If the agency says, we want to argue that this statute is ambiguous and it means one thing, the Attorney General can't say, well, really no, that's against the interests of other agencies that deal with that statute all the time. I'm not going to take that position. They have to answer what the agency says they do. In Illinois, the position is the opposite. We have a unitary executive function with respect to the representation of the state. I also want to clarify that this should not be confused with situations in which a government official, a state official, is sued in their individual capacity or in their personal capacity. Those are different cases. That's like a civil rights case against a state policeman for excessive force in making an arrest where the real party in interest isn't the state. The defendant is the individual. And there, the Attorney General is not exercising her constitutional authority to represent that defendant. There's a separate statutory authority. And the rules regarding the conduct of that representation are not relevant here. That's a totally separate issue. We're talking about situations in which the state is the real party in interest. And I don't, unless there are any questions about that specific classification, I'll assume that the court clearly understands the distinction which is relevant here. So the plaintiff has offered three different arguments over the course of this litigation as to why we should be, the court should replace the Attorney General. Or later, they said, well not replace her, but just have somebody else come up and speak beside her and take the litigation. First, the conflict of interest argument. I think we've disposed of that. They have essentially abandoned it. There is no conflict of interest in this case. Although, that is significantly exactly the factual situation and the sole relevant basis for the holding in the Suburban Cook case. I wanted to ask you about that counsel, the language that opposing counsel quoted where it talks about if the state's attorney is unwilling to support, the court should be able to exercise its discretion and to appoint private counsel. The court did say that. We disagreed that that was a basis for the court's holding. There was a motion for reconsideration. The court made it clear that the basis for its holding was the Supreme Court rules governing lawyers. At that time, the rules of professional conduct of 1990, which have changed. They're no longer the same. It said, based upon that conflict of interest, we can remove an attorney if we need to. It's nice to think that whenever a government official is a party to litigation, they should be able to call the shots. Down that road, the Illinois Supreme Court has said, is going to leave the chaos in the representation of the state. Instead of speaking with a single voice and exercising the type of unitary discretion with respect to the state's representation that the Constitution adopts, then we would have a divergence of multiple voices, potential conflicting positions on important issues. And I can imagine a cacophony of positions taken by the state. But the state shouldn't be speaking with divergent voices. The state shouldn't be contradicting itself left and right just because one agency head decides that he wants to take a position that's colorable or non-frivolous. We have difficult decisions that are made in the office of the Attorney General, including whether to take an appeal from a preliminary injunction. I've had conversations with agency heads where they insist that taking an appeal from a preliminary injunction is the thing to do. And ultimately, the preamble to the rules of professional conduct make clear that that is the type of tough decision that belongs to the Attorney General in our  This situation isn't really much different, whether to take an appeal, whether to assert a position in front of the commission that's been routinely rejected by the commission, in which the Attorney General was threatened with sanctions for persisting and taking that position after it was rejected repeatedly by the commission many times. We're not saying that the director of CMS's contrary position is frivolous. We're just saying that ultimately the core question in this case is, who has the authority under our Constitution to make those decisions? And that is really the nub of the matter. That is the heart of the matter. So Sir Berwyn Cook has other problems. I could elaborate on them. They felt free to criticize the Supreme Court's decision in EPA versus PCB, essentially saying it was wrongly decided. I would urge this Court not to take a similar approach and conclude that the Supreme Court has wrongly decided many cases in which it has uniformly said that the Attorney General's power includes the exclusive representation of and the power to control the conduct of that representation in the broader interest of the people of the State of Illinois. The heart of this question is exactly that, which is when there is a disagreement between the Attorney General with respect to a litigation matter and what arguments should be made, what claims should be asserted, what defenses should be asserted, whether to take an appeal, whether a settlement should be accepted. As to that issue, the Constitution has a clear answer and the Supreme Court has explained what that clear answer is. The dicta in Sir Berwyn Cook, to the contrary notwithstanding, that precedent is controlling. And it includes the EPA versus PCB case itself where the PCB said, we want separate counsel that the Attorney General won't appoint and the Court won't appoint. And the Supreme Court said, we're sorry. If you allow every agency to have appointed counsel whenever the Attorney General refuses to appoint one, there would be chaos in the representation of the State. And essentially, although the plaintiff here argues that no, this is just a narrow little ruling, that's like the camel saying, well, just let me put my nose under the tent this far. We know what the next situation is going to be. Well, if we have the right to stand at counsel table and take a decision whether to take an appeal, we have the right to decide whether to accept the settlement. There is no real stopping point here. And although there are certainly fine policy arguments to be made for adopting an alternative position with respect to the executive exercise of State functions in litigation, the Constitution has resolved that issue. The plaintiff appears to have abandoned the position that the Attorney General's position in this case is arbitrary. Page three of their brief, they say, it makes no sense to question whether she is acting arbitrarily. But they say this case warrants the displacement of her exclusive authority to represent the State because they say she personally disagrees with the position that they want to take here. And in support of that, they quote out of context a statement made by the plaintiff in the brief in the Harris case. We're addressing the common law test for an employer-employee relationship that the Seventh Circuit had used for purposes of the First Amendment analysis. The Attorney General said that essentially these people satisfy that test for First Amendment purposes. But their own proposition here about the disagreement with the Attorney General is refuted by their opening brief where they explain on pages 24 and 25 that even after the Harris case, we have outside the commission advocated the very position that they want advocated, which is that these personal assistants are not employees of the State in the Daley case and in the Evans case. Both of those cases, the Attorney General is taking that position. To say that we disagree with it is a scratch or an exaggeration that it should not dignify a response. But remember, what are the ramifications of the position they want taken? Do they want the courts to inquire now into, in light of all the many factors that the Attorney General weighs in these cases, whether there was a good exercise of discretion or whether there's a good basis to disagree with an executive official with respect to a matter in litigation? I don't think that that's a proper path for the courts to go down. I urge the court not to adopt that premise and try and divine the subjective motivations of executive officials with respect to discretionary functions that aren't limited by a statutory or constitutional limitation. Finally, with respect to the supposed usurpation of the CMS director's own executive functions, the statute gives him, with respect to claims filed before 2013, the right to make an initial determination about compensability. We're not stopping him from making those initial determinations to the extent that there are still cases in the pipeline that call for it. He can do that. But the boundary here is the boundary that is reached when litigation begins. And when litigation begins, that's the only boundary that can be policed. How else are you going to say that any action taken by the Attorney General representing the state in litigation may have ramifications with respect to the future exercise of other executive functions? The only boundary that could be recognized is the one where, if it's in subject to the narrow limitations that the Supreme Court has recognized. Thank you, Counsel. Thank you, Your Honors. Any rebuttal, Mr. Maraschko? Thank you. A couple of quick points. I promised in my opening that I'll point you to the page in Thule Viaduct where you can find this analysis. And that's in the carryover from 846 to 847, and the way that I have it printed out in my Westlaw printout, is the paragraph that begins, we conclude the Attorney General in this case should have offered Calder, an elected official, the representation she requested in light of her tolerable claim that her office was being unconstitutionally terminated by the University Act. And then they go on and analyze, so what else does she have to do if she has a conflict where she represents both sides of the case? I think the punchline that develops from Suburban Cook, as well as from Edgar Vitale, where the case, Edgar describes Suburban Cook as, we reaffirmed the ruling in Lehman, which is the shorthand that they used for Suburban Cook. So I don't see how, I'm not aware of the separate opinion on reconsideration. I mean, this is the opinion that governs for Suburban Cook, and Edgar Vitale in 97. Well, they reference it at the end of Suburban. They talk about the request for reconsideration being filed, and then they do seem to clarify that it really is based on conflict. And then the portion in Tully v. Edgar that you cited, it also seems to be tied to the fact that there is a conflict. Right. But the conflict itself, because of EPA, and because of the logic of all the opinions that the Attorney General relies on, and she has from the Supreme Court, there is no conflict. And so far, she is representing two officials on both sides of the V, because that much is resolved. So I think the only principle that can be motivated in Suburban Cook and Edgar Vitale is that the conflict they're talking about, and the way that we've used the conflict of interest, the Attorney General says we are abandoning that argument. We're not abandoning it in the sense of the conflict of interest here is the Attorney General, on behalf of the state, wishes to advance certain arguments, but what does that do to our own constitutional authority? That's the conflict that applies, and that's that line from Suburban Cook about what's here before us is the very troublesome question. Remember I quoted that discussion, which is where they started. That's, I think, what's motivating Suburban Cook and the discussion, and why it's not just a case about the Attorney General or the state's attorney coming in on both sides of the V. But even if that were, I would submit to you, Your Honor, that regardless of Suburban Cook, the argument that we're making here and the position that we're advocating for makes sense on the basis of the first principles of separation of powers that we've articulated, because at the end of the day, what the Attorney General, what Mr. Hozek has not articulated is, well, what is the answer to this issue? If the governor makes the determination that is as good as dead when the matter goes into litigation before the Workers' Compensation Tribunal, what is left of the governor's power? I mean, it's not as though you can say that in some of those cases the Workers' Compensation claimants will not challenge it. Of course they will. They know that in the Workers' Compensation Commission, that determination is not going to be defended. So it's as good as you don't actually have the ability to say that the lack of the employee-employee relationship disposes of a certain claim. And the last point that I will leave you with is there's the clever formulation, you know, will the real Attorney General please stand up, which is, I chuckled, but the answer to that is the real Attorney General for the state is always going to be the Attorney General. Nobody is seeking to displace her. All we are saying is that the governor does have his own constitutional responsibilities and his constitutional authority. And all we are advocating for is to be able to present and defend our administrative decision-making, not on behalf of the state, not displacing the Attorney General, but being there to make sure that the tribunal hears why the decision was made. And in that particular case, that's especially important because there is no judicial review from the tribunal. There's no appeal to the courts. There's no one else where this argument could be made down the road. So the buck is going to stop with the Workers' Compensation Commission, and we think it's important that the commission hears why the governor instructed the CMS director to make a certain determination. If there's no other questions, thank you. I don't see any. Thank you, counsel. We'll be in recess and take this matter under advisement.